[L.A. No. 31474. May 17, 1982.]

MELVIN LIPSON et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
JOHN BERGER, Real Party in Interest.

COUNSEL

Johnson, Highman & Dillard, Johnson, Harris & Peterson and David R. Highman for Petitioners.

No appearance for Respondent.

Frank D. McAlpine and Kerrigan & McAlpine for Real Party in Interest.

OPINION

**BIRD, C. J.**—This case presents questions concerning the parameters of the common law fireman's rule. The primary issue is whether the rule precludes a fireman, injured in the line of duty, from recovering damages from a party whose negligent or intentional misrepresentation of the nature of an emergency at a chemical manufacturing plant proximately caused the injury. Also at issue is whether the rule bars a fireman's strict liability claim for damages for injuries proximately caused by a party's maintenance of an ultrahazardous activity on the premises at which a fire, or other emergency, occurs.

I.

The facts, as alleged in the first amended complaint of real party, John Berger, are set forth below.

Petitioners own and operate a chemical manufacturing plant in Orange County, California. On January 17, 1979, while serving temporarily with the Orange County Fire Department, real party responded to a chemical boilover at petitioners' plant. In attempting to contain the boilover, which was caused by petitioners' negligence, real party suffered severe injury.

The first and third causes of action allege that real party's injury was proximately caused either by petitioners' negligent or intentional misrepresentation of the nature of the hazard presented by the boilover. Real party asserts that when he arrived at the plant, petitioners informed him that the boilover did not involve toxic chemicals or materials and that there would be no danger in attempting to contain the boilover. In fact, the boilover did involve toxic substances, and real party suffered injury because of his exposure to these toxic substances. This injury would not have been sustained, real party asserts, if petitioners had correctly informed him of the nature of the substances involved because he could and would have taken adequate measures to ensure his safety.

The second cause of action alleges that real party's injury was proximately caused by petitioners' maintenance of an ultrahazardous activity—the manufacture of dangerous and toxic chemicals—on the premises where the boilover occurred.[1] Accordingly, he asserts that petitioners are strictly liable for his damages.

Petitioners moved for summary judgment, arguing that real party's causes of action were barred as a matter of law by the fireman's rule. In support of the motion, petitioners filed excerpts from real party's deposition which established his status as a fireman at the time he responded to the boilover.

In opposition, real party contended that his misrepresentation and strict liability claims did not fall within the limited scope of the fireman's rule as that rule has been applied in California. In the alternative, he argued that the fireman's rule is an anachronism that should be completely abandoned.

The trial court denied petitioners' motion for summary judgment. Petitioners then sought a peremptory writ of mandate to compel the trial court to grant the motion and to dismiss this action. The Court of Appeal issued an alternative writ, and after briefing and oral argument issued the peremptory writ requested. (See generally 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 89, pp. 3865-3866.) This court granted real party's petition for hearing.

## II.

The first issue presented to this court by petitioners is whether the fireman's rule precludes real party from maintaining his negligent and intentional misrepresentation claims. Real party asserts that his claims are not barred by the fireman's rule since petitioners' misrepresentation was a subsequent act of misconduct, distinct from any act or omission by petitioners that may have caused the chemical boilover. According to real party, the fireman's rule only bars a firefighter from recovering for injuries resulting from a person's negligence or recklessness in causing the fire or other emergency which is the reason for the fireman's presence. Decisions of the California courts applying the fireman's rule demonstrate the correctness of this contention.

---

[1] In this cause of action, real party does not allege that the toxic chemicals responsible for his injuries were related to the boilover which necessitated his presence at the chemical plant. .

California first considered and adopted the fireman's rule in *Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355 [72 Cal.Rptr. 119]. There, a forest fire resulted in the deaths of four firemen and caused bodily injuries to two others. In a joint action, plaintiffs alleged that defendant's negligent maintenance of a pole and the wires thereon caused the blaze which resulted in the deaths and injuries. The Court of Appeal reversed the judgment for the plaintiffs holding that "a paid fireman has no cause of action against one whose passive negligence caused the fire in which he was injured." (*Id.*, at p. 360.)

*Scott* v. *E. L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190 [91 Cal.Rptr. 232], extended the application of the fireman's rule to prohibit a fireman from suing a person whose active negligence led to the fire that caused the fireman's injuries. The Court of Appeal restated the fireman's rule as follows: "[W]here the defendant's negligence, whether active or passive, creates an apparent risk, which is of the type usually dealt with by firemen, and which is the cause of the fireman's presence, and which is the direct cause of the fireman's injury, the defendant is not liable to the fireman." (*Id.*, at p. 1199.)

In *Scott*, a fireman responded to a call that a gas main had been ruptured. When the gas escaping from the main ignited, the fireman sustained severe burns. In the trial court, the fireman recovered judgment for his damages based on the negligence of defendant's employee in rupturing the gas main.

The Court of Appeal reversed the judgment. It held that plaintiff's claim was barred as a matter of law by the fireman's rule since defendant's only misconduct was the negligent creation of the very hazard to which the fireman responded in the course of his duty. In reaching this decision, the court in *Scott* emphasized the narrowness of its holding. "We . . . do not deal with . . . situations in which there is some hidden danger known to the defendant but not to the fireman, nor situations in which the fireman is injured as a result of some risk beyond those inevitably involved in firefighting. Neither do we deal with those situations in which the defendant's negligence occurred after the fireman arrived on the scene and materially enhanced the risk of harm or created a new risk of harm. None of those situations are presented by the case at bench." (*Ibid.*) The narrow fact situation in *Scott* involved a defendant whose negligence preceded and was responsible for a fireman's presence at the moment the gas escaping from the main ignited.

This court endorsed the fireman's rule in *Walters v. Sloan* (1977) 20 Cal.3d 199 [142 Cal.Rptr. 152, 571 P.2d 609]. There, the court stated that "negligence in causing a fire furnishes no basis for liability to a professional fireman injured fighting the fire." (*Id.*, at p. 202.) Since firefighting is an occupation which by its very nature exposes firemen to particular hazards, firemen cannot complain of negligent or reckless conduct which forms the basis for their being summoned. (*Ibid.*)

In *Walters*, a policeman was injured while attempting to arrest an intoxicated and disruptive minor at a party at defendants' residence.[2] The police officer's complaint alleged that the injuries were proximately caused by defendants' negligence in furnishing alcoholic beverages to persons under the age of 21. Since "the same negligence occasioned summoning the police," this court found that the fireman's rule barred the police officer from maintaining his cause of action. (*Id.*, at p. 207.)

As in *Scott*, the court in *Walters* stressed the limited applicability of the fireman's rule. In *Walters*, this court explained that negligent or willful misconduct, other than that which created the occasion for the police officer's or the fireman's employment, "may create liability to the injured fireman or policeman. [Citations omitted.] Thus a police officer who while placing a ticket on an illegally parked car is struck by a speeding vehicle may maintain [an] action against the speeder but the rule bars recovery against the owner of the parked car for negligent parking." (*Id.*, at p. 202, fn. 2; see also *id.*, at p. 203, fn. 3.)

Again, in *Hubbard v. Boelt* (1980) 28 Cal.3d 480 [169 Cal.Rptr. 706, 620 P.2d 156], this court distinguished between tortious conduct that creates the risk necessitating a peace officer's presence and subsequent acts of misconduct. Reaffirming the application of the fireman's rule in the former situation, *Hubbard* held that a police officer could not recover for injuries suffered during a high speed chase of a reckless traffic offender, since the police officer "incurred the very risk which occasioned his presence . . . ." (*Id.*, at p. 487.)

At the same time, this court emphasized the limited scope of the fireman's rule. The plaintiff had argued that summary judgment for the defendant should not be affirmed because "the fireman's rule was not

---

[2]This court recognized in *Walters* that the fireman's rule is applicable to causes of action filed by policemen as well as firemen. (*Id.*, at p. 202.) Thus, a policeman cannot recover for injuries resulting from a person's negligence or recklessness in creating the emergency to which the policeman responds in the course of his duty.

intended to bar recovery for independent acts of misconduct which were not the cause of the plaintiff's presence at the accident scene. [Citation omitted.]" (*Id.*, at p. 486.) This court responded that "[w]e have confirmed the validity of this principle in the abstract.... In the present case, however, no such independent act occurred." (*Ibid.*)[3]

It is, thus, unmistakably clear that in California, the fireman's rule has never been construed as shielding a defendant from liability for acts of misconduct which are independent from those which necessitated the summoning of the fireman. (*Kocan* v. *Garino* (1980) 107 Cal.App.3d 291 [165 Cal.Rptr. 712]; *Bartholomew* v. *Klingler Co.* (1975) 53 Cal. App.3d 975, 979 [126 Cal.Rptr. 191].) The rule has *only* been applied to prohibit a fireman from recovering for injuries caused by the very misconduct which created the risk which necessitated his presence.[4]

Moreover, the courts have held that where a police officer's injuries are proximately caused by tortious conduct other than that which necessitated the officer's presence, the fireman's rule does not bar recovery. In *Malo* v. *Willis* (1981) 126 Cal.App.3d 543 [178 Cal.Rptr. 774], a California Highway Patrol officer ordered the defendant and another speeding motorist to pull their vehicles over to the side of the road. The officer parked his patrol car between the two detained vehi-

---

[3]*Hubbard* found that the fireman's rule precludes liability for reckless as well as negligent conduct that requires the summoning of a firefighter or police officer. The court reasoned that the principles and policy considerations underlying the fireman's rule are equally applicable whether the defendant's conduct is reckless or negligent. (*Id.*, at pp. 484-485; accord *Holder* v. *Chunestudey* (1980) 101 Cal.App.3d 959 [161 Cal.Rptr. 925].)

[4]A review of the California court decisions which have applied the fireman's rule finds no exceptions to this statement. In addition to the cases discussed above, see *Ries* v. *Lee* (1981) 115 Cal.App.3d 332 [171 Cal.Rptr. 296]; *Holder* v. *Chunestudey, supra*, 101 Cal.App.3d 959; and *Farmer* v. *Union Oil Co.* (1977) 75 Cal.App.3d 32 [141 Cal.Rptr. 848]. In each of these cases, the court found that the misconduct complained of by the firefighter or police officer was the same misconduct which created the need for his or her services.

*Bay Area Rapid Transit* v. *Superior Court* (1980) 113 Cal.App.3d 1018 [170 Cal.Rptr. 390] is not to the contrary. In that case, one firefighter died and others received burns and inhaled smoke while combating a fire in an underground train. The Court of Appeal issued a writ of mandate to compel the superior court to set aside orders overruling defendant's demurrers. In reaching its decision, the court observed that "[a]llegations that the injuries might have been averted or lessened had ventilation systems, communication systems, or rescue apparatus functioned properly, do not take the case out of the fireman's rule." (*Id.*, at p. 1022.) It does not appear there was any allegation that these defective conditions resulted from an independent tortious act which occurred after the firefighters arrived at the scene. Thus, the Court of Appeal's decision is consistent with the traditional application of the fireman's rule to bar liability if the injuries resulted from the misconduct which necessitated the firefighters' presence.

cles. Thereafter, defendant's car struck the patrol car from the rear when defendant pressed on the clutch pedal instead of the brake. The patrolman sustained a serious whiplash injury. The Court of Appeal held that the fireman's rule did not preclude the patrol officer from maintaining his personal injury action. The officer's injuries were caused by defendant's unfamiliarity with driving an automobile with a manual transmission. This risk was neither "a reason for [the patrolman's] presence at the accident scene," nor one of the risks normally associated with apprehending speeding motorists. (*Id.*, at p. 548.)

Here, real party claims that after he arrived at the chemical plant, petitioners negligently or intentionally misinformed him as to the nature of the hazard at the premises. Petitioners told real party that the chemicals involved in the boilover were not toxic, when in fact they were. In reliance on petitioners' representation, real party did not take the necessary precautions to protect himself from contact with toxic substances. As a result, real party suffered severe injuries while attempting to contain the boilover.

On the basis of these allegations, the conclusion is inescapable that the alleged misrepresentation by petitioners was an act of misconduct independent from any tortious act which may have been the cause of the chemical boilover. Indeed, the misrepresentation occurred after the chemicals had boiled over and real party had arrived on the premises. Obviously, petitioners' misrepresentation of the nature of the hazard was not the reason for real party's presence at the chemical plant.

Real party's claim presents precisely the type of situation which *Scott*, *Walters*, and *Hubbard* held to be outside the narrow scope of the fireman's rule. To paraphrase *Scott*, here the petitioners' alleged misconduct "occurred after the fireman arrived on the scene and materially enhanced the risk of harm or created a new risk of harm." (*Scott v. E. L. Yeager Constr. Co., supra*, 12 Cal.App.3d at p. 1199.)

Moreover, the rationale underlying the fireman's rule does not support shielding from liability a defendant who negligently or intentionally misrepresents the nature of a hazard to an arriving firefighter. The fireman's rule is primarily based on the principle of law denominated assumption of risk. That principle holds that "one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby." (*Walters v. Sloan, supra*, 20 Cal.3d at p. 204.) Assumption of risk is simply not applicable here.

■ As many other jurisdictions and legal commentators have recognized, a fireman does not assume every possible risk he may encounter while engaged in his occupation. (See, e.g., *Armstrong v. Mailand* (Minn. 1979) 284 N.W.2d 343, 350 [11 A.L.R.4th 583]; *Spencer v. B. P. John Furniture Corporation* (1970) 255 Ore. 359 [467 P.2d 429, 432]; *Bartels v. Continental Oil Company* (Mo. 1964) 384 S.W.2d 667, 669; see generally Note (1966) 19 Vand. L.Rev. 407, 409-425; Annot. (1962) 86 A.L.R.2d 1205, A.L.R.2d (Later Case Service 1979) pp. 419-422.) A fireman assumes only those hazards which are known or can reasonably be anticipated at the site of the fire. (*Armstrong v. Mailand, supra,* 284 N.W.2d at p. 350; *Bartels v. Continental Oil Company, supra,* 384 S.W.2d at p. 670.)

Smoke, flames, and the collapse of a burning wall, ceiling, or floor are typical risks normally associated with a fireman's occupation. (*Jackson v. Velveray Corp.* (1964) 82 N.J. Super. 469 [198 A.2d 115, 118].) However, the risk that the owner or occupier of a burning building will deceive a firefighter as to the nature or existence of a hazard on the premises is not an inherent part of a firefighter's job. A fireman cannot reasonably be expected to anticipate such misconduct on the part of an owner or occupier of a building.

■ Thus, the principle of assumption of risk, which forms the theoretical basis for the fireman's rule, is not applicable where a fireman's injuries are proximately caused by his being misled as to the nature of the danger to be confronted. (See *Shypulski v. Waldorf Paper Products Co.* (1951) 232 Minn. 373 [45 N.W.2d 549, 552-553] [collecting cases].)

The type of deception most frequently confronted by the courts has been the failure of a landowner or occupier to warn a fireman of a known, hidden danger on the premises. Virtually all jurisdictions that have considered this factual situation have allowed recovery where the failure to warn ultimately resulted in an injury to the firefighter. (*Buren v. Midwest Industries, Inc.* (Ky. 1964) 380 S.W.2d 96, 97; *Aravanis v. Eisenberg* (1964) 237 Md. 242 [206 A.2d 148, 153]; *Shypulski v. Waldorf Paper Products Co., supra,* 45 N.W.2d at p. 553; *Jenkins v. 313-321 W. 37th Street Corporation* (1940) 284 N.Y. 397 [31 N.E.2d 503, 504]; see generally Annot., *supra,* 86 A.L.R.2d at pp. 1214-1216, A.L.R.2d (Later Case Service 1979) pp. 421-422.)

The rule was articulated best by the Minnesota Supreme Court in *Shypulski*. "[L]andowners and occupants alike owe a duty to firemen to warn them of hidden perils where the landowner or occupant has knowledge of the peril and the opportunity to give warning." (*Shypulski v. Waldorf Paper Products Co., supra*, 45 N.W.2d at p. 553.) In *Shypulski*, the court reasoned that the property owner's burden to warn of hidden perils was not onerous when compared to the detrimental effects of silence. Thus, firemen should not be "required to assume the extraordinary risk of hidden perils of which they might easily be warned." (*Ibid.*)

In California, the *Shypulski* rule was applied in *Bartholomew* v. *Klingler, supra*, 53 Cal.App.3d 975. There, a police officer alleged that in his search for possible intruders at defendant's premises, the officer fell through the ceiling of defendant's building and sustained injuries. The officer claimed that the defendant did not warn him of the ceiling's defective condition. Citing the language of *Shypulski* (*id.*, at p. 979), the court concluded that the facts alleged in the complaint removed the plaintiff's case "from the limited ambit of the 'fireman's rule'" (*id.*, at p. 978).

The parameters of the fireman's rule are well defined. As so delimited, it is clear that the situation in which a defendant negligently or intentionally misrepresents the nature of a hazard to a fireman cannot be meaningfully distinguished from the situation in which a defendant fails to warn of a known, hidden danger on the premises. In both situations, the defendant misleads the fireman as to the nature or the extent of the hazards present at the site of the fire. The defendant is responsible for the fireman's erroneous belief that controlling the fire will not require any special safety precautions. Thus, if a fireman is allowed to recover for injuries suffered because a landowner or occupier failed to warn him of a known, hidden danger on the premises, he must also be allowed to recover for injuries suffered as a result of a negligent or intentional misrepresentation of the nature of the hazard he confronted.

In addition, it has long been established in California that all persons owe a duty of care to avoid injury to others unless public policy clearly requires that an exception be made. (See Civ. Code, § 1714, subd. (a);[5]

---

[5]Civil Code section 1714, subdivision (a) states in pertinent part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . ."

*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) This court can conceive of no policy reason to shield from liability a landowner or occupier whose negligent or intentional misrepresentation of the nature of a hazard proximately causes injury to a firefighter. Indeed, firefighters may often have to rely on information provided by the owner or occupier of the premises to determine how most effectively and safely to combat a fire. If this information is misleading, the result may well be the tragic loss of not only the fireman's life but also the lives of members of the public. Public policy dictates that recovery for injuries or for loss of life should be compensated and the fireman's rule should not be used to shield property owners or occupiers from liability for such tortious acts.

For all of the foregoing reasons, this court holds that a fireman can recover damages for personal injuries sustained as a result of a defendant's negligent or intentional misrepresentation of the nature of the hazard which the fireman is called to confront. While the fireman's rule shields a defendant from liability for negligently or recklessly causing or for failing to prevent a fire, it does not provide protection to a defendant who commits independent acts of misconduct after the firefighters have arrived on the premises.[6]

■ Petitioners next contend that even if the law permits real party to maintain his causes of action based on misrepresentation, the motion for summary judgment should have been granted. Real party's injuries, petitioners assert, were proximately caused by the chemical boilover and not by any misrepresentation as to the nature of the hazard presented. Since it was the boilover which necessitated real party's presence at the chemical plant, the fireman's rule precludes real party from recovering damages from petitioners.

This argument would be meritorious if the facts established that real party would have sustained the same injuries even in the absence of any

---

[6]This court's holding is consistent with an urgency statute recently signed into law by the Governor. The statute amends section 3852 of the Labor Code to read in pertinent part: "(b) Notwithstanding statutory or decisional law to the contrary, any person who knows or should have known of the presence of a peace officer or firefighter is responsible not only for the results of the person's willful acts, but also for any injury occasioned to the peace officer or firefighter by the person's want of ordinary care or skill in the management of the person's property or person, which occurs after the person knows or should have known of the presence of the peace officer or firefighter, except to the extent that the comparative fault of the peace officer or firefighter contributes to the injury." (Stats. 1982, ch. 149, § 1.)

misrepresentations by petitioners. However, petitioners introduced no evidence in support of this contention.

Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. (Code Civ. Proc., § 437c; *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 362 [178 Cal.Rptr. 783, 636 P.2d 1121].) The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory. (*Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 41 [147 Cal.Rptr. 565].) If the evidence accompanying the summary judgment motion is deficient, the moving party cannot rely on the unsupported allegations in his or her pleadings to prove the case. (*Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 147 [60 Cal.Rptr. 377, 429 P.2d 889].)

Here, the only evidence filed by petitioners in support of their summary judgment motion was excerpts from real party's deposition verifying his status as a fireman at the time of the chemical boilover. Petitioners introduced no evidence whatsoever to negate real party's allegation that his injuries were caused by petitioners' misrepresentation of the hazard rather than by the chemical boilover itself. Therefore, the trial court's denial of petitioners' summary judgment motion with respect to real party's misrepresentation claims was correct.

## III.

■ Real party also contends that the fireman's rule should not bar his cause of action alleging strict liability for petitioners' maintenance of an ultrahazardous activity.[7] He emphasizes the rationale underlying the application of the strict liability doctrine. Persons who profit or benefit from engaging in an ultrahazardous activity must bear the burden for any injuries suffered by others from such conduct. (Prosser, Torts (4th ed. 1971) § 75, pp. 494-495; Rest.2d Torts, § 519, com. d, p. 35.) This policy objective, according to real party, will be undermined by the application of the fireman's rule which relieves the wrongdoer of liability and spreads the burden of compensating injured firemen to the taxpaying public.

---

[7] "'An activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage.'" (*Luthringer* v. *Moore* (1948) 31 Cal.2d 489, 498 [190 P.2d 1], quoting from Rest., Torts, § 520.)

The argument raised by real party has not been previously addressed in California. Neither party cites authority which is directly on point. This court's review of the law of other jurisdictions finds that only Minnesota has considered a similar contention. (*Armstrong v. Mailand, supra*, 284 N.W.2d 343.)

In that case, a fire occurred at a liquified petroleum (LP) gas storage facility at an apartment complex. Three firemen attempting to control the fire were killed when the LP storage tank exploded. In one cause of action, plaintiffs alleged that defendants were strictly liable for causing the firefighters' deaths since maintenance of the LP storage tank constituted an abnormally dangerous activity. (*Id.*, at p. 347.)

The Minnesota Supreme Court concluded that recovery on a theory of strict liability for maintenance of an abnormally dangerous activity was barred by the fireman's rule. (*Id.*, at p. 352.) *Armstrong* weighed the strength of the competing policy considerations underlying the strict liability doctrine and the assumption of risk doctrine which forms the basis for the fireman's rule. The court found the latter to be dominant. (*Id.*, at pp. 351-352.) The only exception *Armstrong* recognized was the case in which a fireman's "injury was caused by a hidden or unanticipated risk." (*Id.*, at p. 352.) However, under the facts of *Armstrong*, the firemen knew when they encountered the fire at the LP storage tank that an explosion was likely to occur. (*Id.*, at pp. 352-353.) Thus, the Minnesota Supreme Court affirmed the summary judgment in favor of the defendants.

The conclusion and reasoning of the Minnesota Supreme Court in *Armstrong* offer some guidance for this court's decision. As *Armstrong* explains, the fatal flaw in real party's policy argument is that strict liability for injuries caused by ultrahazardous activities does not amount to absolute liability. (See *id.*, at pp. 351-352.) ■ ■■■■ Both this court and the legal commentators have recognized that a plaintiff's assumption of risk may operate as a complete or partial bar to recovery in a strict liability action.[8] (*Daly v. General Motors, supra*, 20 Cal.3d at

---

[8] In this state, the defense of assumption of risk arises when the plaintiff voluntarily undertakes to encounter a specific known risk imposed by defendant's conduct. (*Grey v. Fibreboard Paper Products Co.* (1966) 65 Cal.2d 240, 245 [53 Cal.Rptr. 545, 418 P.2d 153]; see also 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 722, pp. 3011-3012.) Assumption of risk normally operates as a complete defense to a plaintiff's claim of strict liability. However, when a plaintiff's voluntary encounter with a known risk is also unreasonable, his conduct is in reality a form of contributory negli-

p. 733; *Luthringer* v. *Moore, supra,* 31 Cal.2d at p. 499, quoting from Rest., Torts, § 523; Rest.2d Torts, § 523; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 722, pp. 3012-3013; Prosser, Torts (4th ed. 1971) § 68, p. 456.) The policy considerations underlying the doctrine of strict liability in this state are not so significant as to make the plaintiff's conduct irrelevant in assessing a defendant's liability.

In considering real party's contention, this court returns to the distinction drawn in part II of this opinion between tortious conduct which necessitates the summoning of the fireman and tortious conduct which is unrelated to the original reason for the fireman's presence. Where the defendant's only act was to cause the fire in which the fireman was injured, it is immaterial whether the defendant's act was negligent or ultrahazardous. In either situation, the assumption of risk principle underlying the fireman's rule applies. Firefighters are trained and compensated to fight fires caused by the maintenance of an ultrahazardous activity as well as fires that result from negligent causes.[9] Thus, this court holds that the fireman's rule bars recovery on a theory of strict liability where the fireman sustains injuries as a proximate result of the same ultrahazardous activity that causes the fire.

However, a different situation arises when the fireman's injuries are proximately caused by tortious conduct independent from that which was responsible for the summoning of the fireman. In that case, the fireman's rule does not bar recovery. (*Ante,* at p. 369.) Where the independent act causing the injury is the defendant's misrepresentation of the nature of the hazard, a fireman may sue on a claim of negligent or intentional misrepresentation. (*Ante,* at pp. 369-373.) Similarly, if the independent act causing the injury happens to be the defendant's maintenance of an ultrahazardous activity or condition on his premises, the fireman may recover on a theory of strict liability.[10]

---

gence. (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 824 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) To the extent that the assumption of risk doctrine overlaps with contributory negligence, the former has been abolished as a separate and complete defense. The burden of plaintiff's loss is divided between the parties in proportion to the percentage of fault attributable to each of them. (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 742 [144 Cal.Rptr. 380, 575 P.2d 1162].)

[9]For example, real party testified in his deposition that he was responsible for responding both to boilovers at chemical plants and more typical flame fires.

[10]The defendant is not absolutely liable to a fireman whose injuries are caused by an ultrahazardous condition on the defendant's premises that was independent of the cause of the fire. The defendant can still plead any affirmative defense warranted by the facts. For example, if the injury is caused by the fireman's unreasonable encounter of a known, ultrahazardous condition, the fireman's recovery will be barred or reduced under the comparative fault doctrine.

The two examples which follow may help to clarify the circumstances under which a fireman may recover for injuries on a theory of strict liability. For the purposes of this illustration, it is assumed that storage of a gasoline tank in the basement of a house constitutes an ultrahazardous activity.

Suppose the gasoline tank explodes, causing a fire at the house. A fireman responds to the emergency and is burned by flames while trying to extinguish the fire. There is no evidence that negligence on the part of the defendant caused the explosion. The fireman sues to recover damages on a theory of strict liability for the maintenance of an ultrahazardous condition. His action would be barred by the fireman's rule, since the defendant's maintenance of an ultrahazardous condition on the premises was the very occasion for the fireman's presence at the fire.

By contrast, consider this second example. Faulty electrical wiring on the first floor of a house causes a fire and the fire department is summoned. The responding fireman is unaware that the defendant has stored gasoline in a tank in the basement. While the fireman is attempting to extinguish the fire on the first floor, the gasoline tank explodes, causing the floor to collapse. The cause of the explosion is unrelated to the electrical fire. Flames from the explosion engulf the fireman and he is severely burned. The fireman's rule would not preclude the fireman from recovering on a theory of strict liability. In this example, the fireman's injuries were proximately caused by the defendant's ultrahazardous activity in storing a gasoline tank in the basement. The gasoline tank explosion occurred independently of the electrical fire which was responsible for the fireman's presence at the house.

Here, real party alleges in his complaint that his injuries were caused by petitioners' maintenance of toxic chemicals on the premises, which constituted an ultrahazardous condition.[11] If the toxic chemicals which injured real party were a factor in causing the chemical boilover to which he responded, the fireman's rule would bar real party's cause of action. On the other hand, if the toxic chemicals responsible for real party's injuries were independent from the cause of the boilover, real party would be able to maintain his strict liability claim.

[11] In the absence of any evidence on this issue, this court does not now decide whether petitioners' manufacturing of toxic chemicals actually amounted to an ultrahazardous activity.

The limited record furnished by petitioners in support of their motion for summary judgment provides no evidence as to precisely how real party sustained his injuries or how the boilover began. Therefore, it cannot be said as a matter of law that the fireman's rule bars real party's strict liability cause of action. The trial court's denial of petitioners' motion for summary judgment with respect to this cause of action was correct.

## IV.

Real party's final contention is that the fireman's rule itself should be completely eliminated. He claims that even if the defendant's only misconduct is in causing or failing to prevent a fire on his premises, a fireman should be able to sue for injuries sustained when fighting a fire.

Twice in the last four years, this court has considered and rejected claims that the fireman's rule be abolished. (*Hubbard* v. *Boelt, supra*, 28 Cal.3d 480; *Walters* v. *Sloan, supra*, 20 Cal.3d 199.) These decisions are in accordance with those of virtually all other jurisdictions that have considered the issue. (See, e.g., *Clark* v. *Corby* (1977) 75 Wis.2d 292 [249 N.W.2d 567, 569]; *Grable* v. *Varela* (1977) [115 Ariz. 222 [564 P.2d 911]; *Spencer* v. *B. P. John Furniture Corporation, supra*, 467 P.2d 429, 430-431; see also collected cases in Annot., *supra*, 86 A.L.R.2d at pp. 1209-1214, A.L.R.2d (Later Case Service), *supra*, at pp. 419-421.)

Real party presents no new evidence or arguments to alter the prior rulings of this court in *Hubbard* and *Walters*. Therefore, the rule remains that where a defendant's only connection with a fireman's injury is that his negligence or recklessness caused the fire to which the fireman responded, no damages may be recovered.

## V.

The fireman's rule governs in California. Its parameters are narrow. The rule does not prohibit a firefighter from recovering damages where the act which results in his injury is independent from the act which created the emergency to which the fireman responded. A defendant is liable for failing to warn of a known, hidden danger on his premises or for misrepresenting the nature of a hazard, if such misconduct causes the fireman's injuries. If the defendant's maintenance of an ultrahazar-

dous activity or condition produces a separate injury, the fireman may seek recovery on a theory of strict liability.

The trial court's dismissal of petitioners' summary judgment motion was correct. The alternative writ is discharged and the peremptory writ is denied.

Newman, J., Kaus, J., and Broussard, J., concurred.

**MOSK, J.**—I concur in the conclusion of the majority on the facts alleged in this case, but cannot agree with the entire opinion. Unfortunately the majority do not rest after properly deciding this matter; they offer proposed solutions to several hypothetical cases and, in so doing, their rationale founders.

The instant case is relatively uncomplicated. Plaintiff alleges negligent or intentional misrepresentation of facts which, independently of the fire that brought the fireman to the premises, caused injury to plaintiff. Under these circumstances the fireman's rule does not bar recovery. The basic theory was clearly declared for this court by Justice Clark in *Walters* v. *Sloan* (1977) 20 Cal.3d 199, 204 [142 Cal.Rptr. 152, 571 P.2d 609]: "one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby." If at trial this plaintiff can establish he was deceived by defendant, he did not "knowingly and voluntarily" confront the danger.

Up to that point, the majority opinion is sound. But for reasons which are not apparent to me, the majority then digress into a discussion of the nature of materials that may cause a fire or explosion. In one hypothetical (*ante*, p. 377), the opinion discusses a mythical gasoline tank explosion case in which there "is no evidence that negligence on the part of the defendant caused the explosion." A negative implication follows that if there were negligence, the defendant should be liable. Such holding would violate the basis of the fireman's rule, i.e., that firemen are engaged to fight all fires, regardless of origin. Indeed, it can be said that almost every fire results from someone's active or passive negligence.

A second hypothetical discussed by the majority (*ante*, p. 377) is equally suspect. It purports to hold a defendant liable for "ultrahazardous activity" connected with a fire, even though the defendant did not

misrepresent the nature of the materials on the premises, and, indeed, could have been an absentee owner living miles from the scene.

In any event, the hypothetical circumstances are not before us and are unnecessary to disposition of this case. I therefore dissociate myself from the results suggested in the dicta.

Richardson, J., and Reynoso, J., concurred.