[No. B035023. Second Dist., Div. Three. Oct. 3, 1988.]

WALTER KEARNS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
NANETTE VON RADER, Real Party in Interest.

**COUNSEL**

Patterson, Ritner, Lockwood, Zanghi & Gartner, Robert R. Scholl, Gregory P. Orland and Myrtle E. Arthur for Petitioner.

No appearance for Respondent.

Harney, Wolfe, Shaller & Carr, Harney, Drummond & Packer, Harney, Drummond, Garza & Packer, Robert B. Packer and Thomas Kallay for Real Party in Interest.

**OPINION**

**THE COURT.**\*—Walter Kearns, M.D., one of the defendants in a medical malpractice action, is petitioning for a writ of mandate directing the respondent court to enter an order granting summary judgment and/or summary adjudication of issues as to whether a medical emergency existed when he responded to a request for intraoperative assistance in an unexpectedly difficult surgical procedure. Given the conditions under which Kearns rendered medical assistance, we conclude that it is not reasonably inferable that an emergency did not exist and grant the writ insofar as the respondent court's order denying Kearns's motion is based on a finding that a triable issue exists as to the existence of an emergency.

*Discussion*

In November 1984, Malverse Martin, M.D., a codefendant in this action but not a party to this writ proceeding, performed surgery upon plaintiff Von Rader to remove a malignant ovarian tumor. During surgery, Martin determined he could not remove the tumor without additional assistance and requested the assistance of Kearns in order to complete the surgery. It is undisputed that Kearns had never treated, diagnosed, consulted or in any matter participated in the treatment and care of plaintiff prior to the request to render intraoperative assistance. Sometime during the surgery, the malignant contents of the tumor spilled into plaintiff's abdomen, seeding the abdomen with cancer cells.

Plaintiff then filed this medical malpractice action, naming Kearns as one of the defendants. By means of a motion for summary judgment and/or summary adjudication of issues, Kearns sought the protection of the Good Samaritan law codified in Business and Professions Code sections 2395 and 2396.[1]

Section 2395 provides: "No licensee, who in good faith renders emergency care at the scene of an emergency, shall be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care. . . ."

Section 2396 provides: "No licensee, who in good faith upon the request of another person so licensed, renders emergency medical care to a person for medical complication arising from prior care by another person so licensed, shall be liable for any civil damages as a result of any acts or

---

\*Before Klein, P. J., Arabian, J., and Croskey, J.

[1] All statutory references are to the Business and Professions Code.

omissions by such licensed person in rendering such emergency medical care."

The legislative purpose underlying both sections is to induce physicians to render medical assistance to persons in need of such care. (*Colby* v. *Schwartz* (1978) 78 Cal.App.3d 885, 891 [144 Cal.Rptr. 624].) The legislative purpose is best effectuated by discouraging even the commencement of an action against a health care professional who has rendered emergency medical assistance. (*Ibid.*)

The Good Samaritan legislation is "directed towards physicians who, by chance and on an irregular basis, . . . are called to render emergency medical care." (78 Cal.App.3d at p. 892.) An emergency exists " ' ". . . where the exigency is of so pressing a character that some kind of action must be taken . . . ." ' " (*Newhouse* v. *Bd. of Osteopathic Examiners* (1958) 159 Cal.App.2d 728, 735 [324 P.2d 687].)

Where, as here, unexpected complications during surgery produce a pressing necessity requiring immediate intraoperative assistance during a crucial stage of the operation, an emergency exists. Although Kearns's deposition testimony indicates he does not specifically remember the details of the call for assistance or of the surgery, it is not reasonably inferable under the circumstances present here that the situation was other than an exigency of so pressing a nature that immediate action was necessary.

The test for determination of the existence of an emergency is objective: whether the undisputed facts establish the existence of an exigency of "so pressing a character that some kind of action must be taken." A "stat" call is not required to identify an emergency occurring in a hospital and is not a condition precedent for determination as to whether an emergency exists within the meaning of the Good Samaritan statutes.

In *McKenna* v. *Cedars of Lebanon Hospital* (1979) 93 Cal.App.3d 282 [155 Cal.Rptr. 631], the court found the Good Samaritan law is not limited as to the situs of an emergency and applied the law to emergency situations arising in hospitals. (*Id*. at pp. 285-288.) The immunity offered by sections 2395 and 2396 applies regardless of where the emergency occurs (*id*. at p. 289), including the surgical department of a hospital.

We conclude that when the operating surgeon determines that an unforeseen complexity creates the medical necessity to obtain assistance to complete ongoing surgery in order to protect the health of the patient, an emergency exists within the meaning of the Good Samaritan law.

In *McKenna,* an almost identical factual context, the chief resident of the hospital, who was on duty when he was called to render medical assistance to another doctor's patient, ". . . was, in essence, a medical volunteer, called to the scene of an emergency from the floor above . . . ." (93 Cal.App.3d at p. 286.)

Because it is conceded that Kearns merely happened to be in the hospital treating his own patients and had no duty of professional care to plaintiff preexisting the request for intraoperative assistance, Kearns had no legal duty to respond to the call for emergency surgical assistance. Clearly, under the circumstances present here, Kearns was "a medical volunteer, called to the scene of an emergency," who rendered emergency medical care to plaintiff in good faith "upon the request of another person so licensed" (§ 2396) at the place where the emergency occurred. (§ 2395.)[2]

The facts here are remarkably similar to those in *Burciaga* v. *St. John's Hospital* (1986) 187 Cal.App.3d 710 [232 Cal.Rptr. 75], in which the court held a staff physician who provided emergency hospital medical care within his specialty was entitled to the protection of the Good Samaritan law. (*Id.* at p. 714.) Absent a duty of professional care preexisting the emergency, the Good Samaritan law is applicable to protect a physician who renders emergency assistance in a hospital to the patient of another doctor. (*Id.* at p. 716.) "The heart of the application of the Good Samaritan statutes is the inquiry whether a duty of professional care pre-existed the emergency." (*Ibid.*) The events described here fall squarely within the holding of *Burciaga.*

It is indisputable that it is in the best interests of public policy that the Good Samaritan laws be applied in a manner which encourages a physician who happens to be in the hospital and available to provide intraoperative assistance when unexpected complications arise during surgery to provide the assistance requested. As stated in *Burciaga*: "It is a desirable social objective to encourage prompt medical care . . . ." (187 Cal.App.3d at p. 716.) The principle is applicable irrespective of the nature of the emergency or its situs in an operating room.

We conclude the Good Samaritan statutes which provide immunity for any acts or omissions of a medical volunteer who in good faith renders emergency medical assistance are applicable under the circumstances present here.

Having notified all parties of our intention to issue a peremptory writ in the first instance, having fully reviewed the record and the opposition filed

---

[2] We make no finding as to whether Kearns met the standard of care.

in this court, we have determined that this is an appropriate matter for issuance of a peremptory writ in the first instance. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ issue directing the respondent court to vacate its order denying Kearns's motion for summary judgment and/or summary adjudication of issues and to enter instead an order in accord with the views expressed herein.

A petition for a rehearing was denied November 11, 1988, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied December 21, 1988.