[No. B044721. Second Dist., Div. Five. Jan. 15, 1991.]

ROBERT BRYANT et al., Plaintiffs and Appellants, v.
KIUMARS BAKSHANDEH, Defendant and Respondent.

1242

**COUNSEL**

Emmett J. Gantz and Jean Ballantine for Plaintiffs and Appellants.

Baker, Silberberg & Keener and Karen L. Canter for Defendant and Respondent.

**OPINION**

**LUCAS, J.\***—The issue on appeal is whether the trial court erred in granting respondent Kiumars Bakshandeh's motion for summary judgment based upon his immunity from liability under the provisions of the Good Samaritan laws. We conclude factual issues remain to be resolved regarding that issue and reverse the order granting summary judgment.

### FACTS

On April 27, 1987 at Cedars Sinai Medical Center (Cedars), Doctors Stephen Gans and Edward Austin anesthetized Shaun Bryant, the infant son of appellants Robert and Virginia Bryant, and were preparing to perform surgery on him to correct an imperforate anus. It was required that a catheter be inserted in Shaun's urethra before the operation could proceed. Several attempts to insert the catheter failed. Bakshandeh, an urologist who was in the hospital attending his own patient, answered a "stat" call for assistance. Gans informed Bakshandeh that an elective procedure was being performed which required insertion of a catheter. Bakshandeh attempted several insertions of the catheter and then told Gans he did not think he could complete the catheterization without cystoscoping the child. Gans ascertained that Bakshandeh had experience with this procedure and told him to proceed. Bakshandeh left the room for about eight or ten minutes. He returned, performed the cystoscopy, and made several more attempts to

---

\* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

insert the catheter. When these did not succeed, the operation was postponed. In his medical reports, Bakshandeh states that he performed the procedures on Shaun on an emergency basis.

Shaun died on April 30, 1987, from an infection resulting from perforation of his rectal pouch during the preoperative procedures.

The Bryants sued Cedars, Austin, Gans and various Doe defendants for wrongful death, negligence, and failure to adequately inform of the possible complications associated with the surgery. The complaint was later amended to add Bakshandeh as a defendant.

Bakshandeh moved for summary judgment based on sections 2395 and 2396 of the Business and Professions Code, the Good Samaritan laws.[1] Bakshandeh listed as an undisputed material fact that "Dr. Gans, the operating surgeon determined that an unforeseen complexity, the inability to pass a catheter, created the medical necessity to obtain assistance to complete on-going surgery in order to protect the health of the patient." He supported this statement with the deposition testimony of Gans and Austin that insertion of the catheter was necessary in order to proceed with the surgery.

The Bryants opposed the motion, arguing that Bakshandeh had not rendered emergency care because inserting a catheter was a preplanned surgical procedure and that the deposition testimony did not establish that the inability to insert the catheter was an unforeseen complexity.

Bakshandeh subsequently filed a declaration by Gans which stated: "The failure to insert a catheter was an unforeseen complexity, and I determined it would be appropriate to call a urologist to the operating room to introduce the catheter."

During a hearing at which it granted a continuance to the Bryants to rebut Gans's declaration, the court said, "Dr. Gans' declaration uses the magic words, at least in part, and I'm referring now to the fact that in his declaration . . . Dr. Gans uses two words, 'unforeseen complexity,' . . . ."

---

[1] Section 2395 of the Business and Professions Code reads in relevant part: "No licensee, who in good faith renders emergency care at the scene of an emergency, shall be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care." Business and Professions Code section 2396 reads: "No licensee, who in good faith upon the request of another person so licensed, renders emergency medical care to a person for medical complication arising from prior care by another person so licensed, shall be liable for any civil damages as a result of any acts or omissions by such licensed person in rendering such emergency medical care."

Prior to the next hearing, the Bryants filed a declaration by Michael J. Goldberg, a pediatrician who had participated in or observed numerous catheterizations and who had examined Shaun's medical records. He stated: "Based on my learning and experience it is my opinion that the inability to insert a urethral catheter in a male infant is a known complication and that this specific difficulty is well known in the local medical community."

Following further argument by the parties, the court took the matter under submission and eventually denied the motion for summary judgment. The court decided to reconsider its ruling after Bakshandeh moved for additional time within which to file a petition for writ of mandate and the court noted that its order denying the motion for summary judgment did not specify what material issues of fact remained.

In its subsequent order granting the motion for summary judgment the court stated: "The Court finds that there are no material issues of fact remaining. The Court concludes that *Kearns* v. *Superior Court* (1988) 204 Cal. App. 3d 1325 [252 Cal.Rptr. 4] is controlling. Whether an emergency exists and whether an unforeseen complexity creates the necessity to obtain assistance to complete the surgery is determined by the operating surgeon."

## DISCUSSION

■ "Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried." (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) Bakshandeh successfully argued to the trial court that there could be no remaining issue of fact as to his liability for Shaun's death because he was exempt from liability under the Good Samaritan statues. However, "[m]ere conclusions of law or fact are insufficient to satisfy the evidentiary requirements" (*Ahrens* v. *Superior Court* (1988) 197 Cal.App.3d 1134, 1141 [243 Cal.Rptr. 420]) for a summary judgment and it "may not be based on inferences which are contradicted by other inferences. . . ." (*Ibid.*) ■ Thus, in determining whether summary judgment was properly granted under these circumstances we must determine whether there is a triable issue of fact as to whether Bakshandeh comes within the protection of the "Good Samaritan" statutes.

The Bryants attempt to rely on *Colby* v. *Schwartz* (1978) 78 Cal.App.3d 885 [144 Cal.Rptr. 624], in support of their contention that he does not. The *Colby* court concluded that the Good Samaritan laws "were directed towards physicians who, by chance and on an irregular basis, come upon or

are called to render emergency medical care" (*id.* at p. 892) and held that where "physicians are rendering such aid as part of their normal course of practice, . . . the balance of interests must favor the redress of malpractice rights." (*Id.* at p. 893.) In *Colby,* the physicians who rendered in-hospital emergency services were members of the hospital emergency call panel. Thus, they placed themselves in the position of having a duty to care for an accident victim who required emergency medical assistance. *Colby* is not applicable here because "[t]he heart of the application of the Good Samaritan statutes is the inquiry whether a duty of professional care pre-existed the emergency." (*Burciaga* v. *St. John's Hospital* (1986) 187 Cal.App.3d 710, 716 [232 Cal.Rptr. 75]; *Kearns* v. *Superior Court, supra,* 204 Cal.App.3d 1325, 1329.) The Bryants have presented no evidence that Bakshandeh had a preexisting duty to render professional care to Shaun.

■ A physician who renders emergency aid in a hospital is afforded the immunity of the "Good Samaritan" statutes "unless a specific factual situation (such as that in *Colby* v. *Schwartz, supra,* [78 Cal.App.3d 855]) is not within the ambit of the legislative intent" (*McKenna* v. *Cedars of Lebanon Hospital* (1979) 93 Cal.App.3d 282, 287 [155 Cal.Rptr. 631]) "of encouraging emergency medical care by doctors who have no legal duty to treat a patient." (*Id.* at p. 286; see *Kearns* v. *Superior Court, supra,* 204 Cal.App.3d at p. 1329; *Burciaga* v. *St. John's Hospital, supra,* 187 Cal.App.3d at p. 715; *Colby* v. *Schwartz, supra,* 78 Cal.App.3d at p. 891.) ■ Therefore, Bakshandeh is immune from liability if he comes within the requirement in both Good Samaritan statutes that he be a physician who, in good faith, rendered "emergency care," either at the scene of an emergency or in response to a request after medical complications arose from prior care.

The trial court apparently based its finding of immunity on the conclusion of the reviewing court in *Kearns* v. *Superior Court, supra,* 204 Cal.App.3d at page 1325, that "when the operating surgeon determines that an unforeseen complexity creates the medical necessity to obtain assistance to complete ongoing surgery in order to protect the health of the patient, an emergency exists within the meaning of the Good Samaritan law." (*Id.* at p. 1328.)

The trial court concluded that the operating surgeon should be the person who determines whether an emergency or unforeseen complexity exists. We agree that, ordinarily, a physician who answers a "stat" call for emergency assistance should not be required to "second guess" the operating surgeon before he gives the requested assistance.

However, we note that the facts in this case differ markedly from the usual in-hospital emergency situation. In *Kearns,* immediate assistance was

required during ongoing surgery to protect the patient's health; in *Burciaga*, an obstetrician requested immediate assistance from a pediatrician for a baby who was having respiratory distress after being born with the umbilical cord around its neck; and, in *McKenna*, the responding physician medicated and performed external heart massage on a patient who experienced cardiac arrest while being treated for seizures. Here, although Shaun was anesthetized, the contemplated surgical procedure had not begun and, in fact, could not begin until Bakshandeh inserted the catheter. Moreover, Bakshandeh was informed the surgery was elective.

Dr. Gans did not use the word, "emergency," in describing the situation which existed at the time he called for assistance, and Dr. Goldberg did not deny that an "emergency" could have existed even though the difficulty in inserting the catheter was a "known complication." Thus, although their declarations place the issue of "foreseeability" in dispute, neither physician's declaration is helpful in determining whether exigent circumstances required immediate action.

We find that, given the facts existing at the time Bakshandeh was called to the operating room, the operating surgeon's use of the words, "unforeseen complexity," in his declaration is not determinative on the issue of whether an emergency existed. Therefore, we cannot say, as a matter of law, that Bakshandeh is protected by the Good Samaritan statutes.

 "The test for determination of the existence of an emergency is objective: whether the undisputed facts establish the existence of an exigency of 'so pressing a character that some kind of action must be taken.'" (*Kearns* v. *Superior Court, supra*, 204 Cal.App.3d at p. 1328.) However, we believe that the use of the word "good faith" in the "Good Samaritan" statutes indicates that the test of whether a physician is entitled to the protection of the statutes can involve the subjective belief of the responding physician. In this case, it is for the trier of fact to determine whether Bakshandeh had a reasonable, good faith belief that he was responding to an emergency situation when he performed the requested procedures; or whether, under these circumstances, a physician acting in good faith would have reasonably concluded his immediate assistance was not required because no emergency existed.

Since a material issue of fact remains as to whether Bakshandeh was responding in good faith to the sort of emergency situation which brings him within the protection of the Good Samaritan statutes, we conclude that his motion for summary judgment should not have been granted.

## DISPOSITION

The order granting summary judgment is reversed. The parties to bear their own costs on appeal.

Turner, P. J., and Boren, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 28, 1991. Lucas, C. J., did not participate therein.